UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTEO PLANCARTE,<br><br>  Plaintiff,<br><br>  v.<br><br>D. JORGE, et al.,<br><br>  Defendants. | Case No.: 1:15-cv-00345-AWI-SAB (PC)<br><br>ORDER DISMISSING FIRST AND SECOND AMENDED COMPLAINTS, WITH LEAVE TO AMEND, FOR FAILURE TO STATE A COGNIZABLE CLAIM FOR RELIEF<br><br>[ECF Nos. 12, 27] |

Plaintiff Timoteo Plancarte is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff declined United States Magistrate Judge jurisdiction; therefore, this action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

**I.**

**BACKGROUND AND CURRENT COMPLAINT**

Plaintiff filed his original Complaint in this action on January 12, 2015. (ECF No. 1.) On March 27, 2015, before Plaintiff's original Complaint was screened, he filed a First Amended Complaint. (ECF No. 12.)

On December 17, 2015, the Court screened Plaintiff's original Complaint, and dismissed it for the failure to state a cognizable claim upon which relief may be granted, with leave to amend. (ECF No. 19.) The Court noted that Plaintiff's original Complaint was largely conclusory with little factual allegations. (Id. at 2-3.)

1

Plaintiff's First Amended Complaint was not screened. Following several extensions of time, on March 30, 2016, Plaintiff filed a Second Amended Complaint. (ECF No. 27.)

In reviewing Plaintiff's First and Second Amended Complaints, it appears his First Amended Complaint is an effort at providing sufficient factual allegations to state a cognizable claim upon which relief may be granted. Plaintiff's Second Amended Complaint, however, is mainly composed of legal arguments and conclusory assertions that his rights have been violated, with no factual allegations. Thus, although Plaintiff has submitted a Second Amended Complaint for filing, the Court finds it appropriate, in the interests of justice, to substantively screen Plaintiff's First Amended Complaint at this time. Plaintiff's Second Amended Complaint will be dismissed for the failure to state a claim upon which relief may be granted.

Accordingly, Plaintiff's First Amended Complaint, filed March 27, 2015, is currently before the Court for screening.

## II.

## SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail to state a claim on which relief may be granted," or that "seek monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir.2002).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121

(9th Cir. 2012)(citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## III.

## COMPLAINT ALLEGATIONS

Plaintiff, is a state inmate in the custody of the California Department of Corrections and Rehabilitation ("CDCR") at the Correctional Training Facility at Soledad. The events at issue here occurred when he was incarcerated at the Sierra Conservation Center ("SCC") at Jamestown. Plaintiff names as Defendants the following individuals: D. Jorge, RN; R. Griggs, RN; Dr. J. Krpan; J. Benak, PA-C; Dr. Bangi; T. Day, PA-C; Dr. Shuddy; Dr. Kimn; Dr. St. Clair; CMO; and CDCR unknown medical staff.

Plaintiff alleges as follows: While incarcerated at Duel Vocational Institution ("DVI") on approximately June 31, 2009, Plaintiff was administered a standard medical Tuberculosis ("TB") test (a mandated CDCR test for TB).

On approximately July 2, 2009, an unknown DVI medical staff observed Plaintiff through a cell door and determined from four feet away from his arm that he tested positive for TB. Further medical testing needs to be conducted to ascertain the reliability of a positive visual reading, but no further determination of TB was provided to Plaintiff. Plaintiff concluded that he did not have TB, and he was not subjected to any TB medical custody classification while at DVI.

On September 3, 2009, Plaintiff was transferred from DVI to SCC. Upon Plaintiff's arrival at SCC, intake nurse D. Jorge conducted the new arrival interview. Nurse Jorge informed Plaintiff that he had TB and must take the required medication. Plaintiff stated, "I don't have TB," and requested further testing. Despite Plaintiff's objections, Nurse Jorge insisted there would be no more TB tests for Plaintiff, and further that if he did not immediately take his TB medication, he would receive a CDCR 115 (disciplinary write-up) and be sent to administrative segregation. A CDCR policy mandates that

1 every newly arrived inmate at every CDCR prison shall be given a TB test, so Plaintiff should have
2 been TB tested upon arrival at SCC.

3 Plaintiff, faced with a write-up and Ad-Seg, chose to take the medication. Twenty-four hours
4 after Plaintiff consumed the TB medication, he became extremely ill.

5 On September 10, 2009, Plaintiff was medically interviewed by SCC staff nurse Griggs, and
6 was advised through a Spanish interpreter, that Plaintiff had TB.[1] Further, Nurse Griggs advised
7 Plaintiff of the names of the medications he had to take for TB. Plaintiff stated that the TB medication
8 given to him on September 3, 2009 made him sick, and requested further tests to prove that he did not
9 have TB. Nurse Griggs responded, "If the medication is making you sick, then don't take it." Nurse
10 Griggs did not schedule any further screening or test for TB, nor take any medical intervention
11 regarding Plaintiff's complaint that the TB medication was making him sick.

12 On September 29, 2009, Plaintiff was medically interviewed by SCC physician assistant-
13 certified ("PA-C") J. Benak. PA-C Benak advised Plaintiff that he must take his prescribed TB
14 medications, or risk a write-up and disciplinary action that would place him in Ad-Seg. Plaintiff stated
15 that the TB medication was making him sick, and requested further testing to prove that he did not
16 have TB. Due to the threat of being placed in Ad-Seg with disciplinary action, Plaintiff agreed to take
17 the medication.

18 For inmates to participate in camp program, they must pass a medical physical and mental
19 examination. A positive TB test would automatically disqualify an inmate from participating in camp
20 program. Subsequently, Plaintiff lost his fire camp eligibility due to the forced TB medication
21 treatment. Plaintiff's disqualification from the SCC fire camp program mentally and psychologically
22 devastated him to the point where he disassociated himself from everything and everyone for months.

23 On or about October 6, 2009, Plaintiff was prescribed the TB medication known as "isoniazid
24 300 milligrams" three tablets twice a week, and "pyridoxine 50 mg" one tablet twice a week, by PA-C
25 J. Benak. Almost immediately after taking these medications, Plaintiff became sick. By the second
26 dose, Plaintiff's sickness worsened to the point of causing nausea, vomiting of blood, extreme

---

28 [1] Plaintiff speaks and comprehends very little English.

4

abdominal plain, and a lemon-sized lump developed in the upper left side of Plaintiff's quadrant. This condition currently exists.

On October 11, 2009, Plaintiff required an emergency medical evaluation due to the prescribed TB medication and the harmful side effects that it caused. Plaintiff stated during the medical examination to the attending doctor, Dr. Krpan, that he "wanted to be re-tested for TB, because I do not have TB in the first place, and the medication is making me sick." Dr. Krpan indicated that he felt Plaintiff had been nauseated because of his TB medications, which he discontinued. Nevertheless, Dr. Krpan did not order, conduct, or request procedural TB tests to ascertain if Plaintiff had TB.

On October 13, 2009, Nurse Griggs interviewed Plaintiff regarding his persistent adverse physical effects to taking the TB medication. During this interview, Plaintiff again stated, "I don't have TB and I want to take a TB test." Nurse Griggs denied Plaintiff the requested TB test and stated, "I am not interviewing you for that. Because your TB medications have been discontinued, you must sign the form releasing the medical department from liability for you refusing TB treatment." Plaintiff, confused regarding Nurse Griggs' statements, responded, "I have not refused anything, and I'm not signing that paper." The form Nurse Griggs wanted Plaintiff to sign was typed exclusively in English, thus Plaintiff could not fully comprehend most of what the form entailed, and for this reason he refused to sign.

Later on that same day, Plaintiff received a second medical emergency due to chronic pain of the abdominal area from the TB medication previously taken. Plaintiff was medically evaluated by SCC Dr. Smith, whom ordered Plaintiff to be transported by ambulance to the Sonora Regional Medical Center Hospital ("SRMC"). Plaintiff was admitted and diagnosed with acute abdominal pain. An unknown nurse placed a standard oxygen tube ventilator in Plaintiff's nose and questioned him as to the extent of his medical programs through a Spanish interpreter. Plaintiff explained to the SRMC medical staff that the TB medication administered to him by the CDCR medical department caused him to have an adverse reaction. The attending nurse placed a facial mask guard on her face, stating to the escorting supervising correctional officer, "I don't want to be catching any disease." The SRMC nurse handed Plaintiff a liquid formula, explain that it was a solution that would assist in ultrasound detection, and after the ultrasound was completed, the staff conducted a CT scan.

5

On October 14, 2009, while Plaintiff was still admitted at SRMC, he was evaluated by an unknown physician, who concluded that Plaintiff's abdominal and quadrant pain was more than likely the result from the administered TB medication and a history of gastroesophageal reflux disease. The physician recommended Plaintiff take additional medical tests, and Plaintiff agreed. While Plaintiff was being prepared by an SRMC nurse for an esophagogastroduodenoscopy and an ultrasound, the nurse gave him some unknown medications and stated, "take this for your TB disease." Plaintiff refused the medication, stating that he does not have TB and it was TB medication that made him sick. The nurse told Plaintiff's escorting correctional officer that if Plaintiff did not take the medication, he would not be treated. One of the officers demanded that Plaintiff "either take the TB medication or you will be locked-up." Plaintiff refused, and was discharged from SRMC for refusing medical treatment.

While Plaintiff was at SRMC, they conducted TB-related screening and determined Plaintiff did not have symptoms or test positive for TB while at SCC. However, on October 16, 2009, Dr. Krpan evaluated Plaintiff in the OHU, and stated Plaintiff's positive TB skin test and medications would be re-addressed in two to three months after his stomach had healed and he had completed H. pylon treatment.

On October 18, 2009, Plaintiff was transferred to CSP-Solano. Upon arrival, he was appropriately medically TB tested as a newly transferred arrival and his results were negative.

On October 26, 2009, Dr. Bangi referred Plaintiff for a mental health evaluation, alleging Plaintiff was paranoid for refusing medical treatment while at SRMC. Plaintiff did not have knowledge of or approve the referral. Sometime during the month of October 2009, Plaintiff was evaluated by an SCC mental health psychiatrist who determined Plaintiff had no mental health abnormalities.

On November 20, 2009, Plaintiff (with assistance) submitted a CDCR 602 to the appropriate responsible department/party regarding the above maters. Within said 602, Plaintiff contended among other things that (1) prison medical staff gave Plaintiff medication that he was allergic to; and (2) denied Plaintiff appropriate medical care, due to the results thereof.

///

On December 18, 2009, Dr. Bangi evaluated Plaintiff during a scheduled follow-up appointment. Dr. Bangi indicated that Plaintiff reported he was still having chronic abdominal pain that was a 2 to 3 out of 10, worse with the intake of meals, of gradual onset.

On December 23, 2009, T. Day, PA-C, evaluated Plaintiff regarding his appeal issues. PA-C Day advised Plaintiff that several medical providers had evaluated him in early October 2009, including three board-certified staff physicians and two board-certified physician assistants, in addition to the physicians at SRMC. PA-C Day indicated that Plaintiff's most recent evaluation was performed by Dr. Bangi on December 18, 2009. PA-C Day advised Plaintiff that the name of the drug that had allegedly been given to him inappropriately was presumably isoniazid.

On January 24, 2011, Plaintiff submitted a CDCR 602 at CSP-Solano, regarding his medical condition and treatment. Plaintiff contended that (1) he is chronically in severe pain that does not allow him to have a good night's rest; (2) he has to walk around all day applying pressure to his upper abdominal pain area to decrease throbbing; (3) the medications prescribed by the medical staff have been ineffective, repetitive, and have exasperated the medical problem. Although Plaintiff received Tylenol for his chronic pain and medical evaluation services, he continues to be in constant severe pain, and to be told by CDCR medical staff that he has received adequate care.

During the month of July 2010, Plaintiff filed a complaint regarding this matter with the Victim's Compensation and Government Claims Board. On October 28, 2010, Plaintiff's claim was denied.

Plaintiff alleges Eighth Amendment claims for ineffective medical treatment, and Due Process violations, and negligence. Plaintiff seeks declaratory relief and seeks a court-ordered medical evaluation by specialists that are independent from all contractual relations with CDCR. Plaintiff further seeks $500,000.00 in damages. Plaintiff also seeks for the Court to declare CDCR and the State of California financially liable for all violations committed by SCC medical staff while on duty.

Plaintiff attaches several exhibits to his First Amended Complaint which are identified with references, and which the Court has reviewed as appropriate.

///

///

## IV.

## DISCUSSION

### A. Eighth Amendment

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment in violation of the Eighth Amendment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)(quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The two part test for deliberate indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096. A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). "Deliberate indifference is a high legal standard," Simmons v. Navajo County Ariz., 609 F.3d 1011, 1019 (9th Cir. 2010); Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm. Jett, 439 F.3d at 10986.

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-106). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). Additionally, a prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

1. Nurse Jorge and PA-C Benak

Plaintiff claims that both Defendants Jorge and Benak were deliberately indifferent in failing to ascertain whether Plaintiff had TB, and in administering TB medications to Plaintiff without determining whether he had TB. However, Plaintiff has not alleged sufficient facts showing that either of these Defendants knew that Plaintiff had any serious medical need for further TB testing. Nor has Plaintiff alleged any facts showing that either of these Defendants knew that Plaintiff would have a negative reaction to TB medications.

Plaintiff's allegations only plausibly suggest that both Defendant Jorge and Benak understood Plaintiff to have been diagnosed with TB and to require medication and treatment, but that the Defendants' understandings were mistaken. These allegations are not sufficient to state a cognizable claim for deliberate indifference to a known medical risk. Plaintiff will be granted leave to amend these claims to attempt to correct these deficiencies.

2. Nurse Griggs

Plaintiff claims that Defendant Griggs was deliberately indifferent in failing to ascertain whether Plaintiff had TB, and in delaying to properly diagnose his "negative" TB screening. Plaintiff also claims that Defendant Griggs violated his rights by threatening him that he would not receive appropriate medical care if he refused to sign a waiver.

Plaintiff has not alleged sufficient facts showing that Defendant Griggs knew Plaintiff had any serious medical need for further TB testing. Plaintiff has alleged that Plaintiff requested further testing and that Defendant Griggs did not order it, but this at most suggests a disagreement with a treatment recommendation, which does not rise to the level of deliberate indifference of a known serious medical need or risk.

Regarding the waiver Defendant Griggs presented to Plaintiff on October 13, 2009, Plaintiff alleges that he refused to sign the paper because it was typed exclusively in English. Plaintiff does not allege any facts showing that Defendant Griggs threatened to deny him any medical care, or showing that any medical care was required at that time.

Thus, Plaintiff has not stated any claim against Defendant Griggs for deliberate indifference to a serious medical need or risk. Plaintiff will be granted leave to amend this claim.

### 3. Dr. Krpan

Plaintiff claims that Defendant Krpan was deliberately indifferent in failing to ascertain whether Plaintiff had TB, and in delaying to properly diagnose his "negative" TB screening. Plaintiff also claims that Defendant Krpan violated his rights by threatening to not provide medical care.

Regarding Plaintiff's medical examination with Defendant Krpan on October 11, 2009, Plaintiff alleged that Defendant Krpan responded to Plaintiff's statements that the TB medication was making him sick by evaluating him and discontinuing those medications. This does not show deliberate indifference to Plaintiff's condition, but rather demonstrates responsive care being provided. Although Plaintiff requested further testing and Defendant Krpan did not order such testing, at most Plaintiff has only shown a disagreement with a treatment recommendation.

Regarding the October 16, 2009 evaluation, Plaintiff alleges that Dr. Krpan would re-address Plaintiff's positive TB skin test and medications in two to three months after Plaintiff recovered from his condition and treatment. Rather than showing any indifference to Plaintiff's medical condition, the reasonable inference from these allegations is that Dr. Krpan planned to address Plaintiff's TB condition when that doctor found that it would be medically appropriate to do so. These allegations do not plausibly show any deliberate indifference by Defendant Krpan.

Plaintiff will be granted leave to amend this claim.

### 5. Dr. Bangi

Plaintiff claims that Defendant Bangi was deliberately indifferent in failing to ascertain whether Plaintiff had TB. Plaintiff's allegations that Defendant Bangi referred him for a mental health evaluation due to his refusal of medical treatment does not demonstrate indifference to Plaintiff's condition. Plaintiff has not stated any facts to show that Defendant Bangi should have known Plaintiff actually required TB testing. Although Plaintiff did not approve of the referral and was not found to have any mental health abnormalities, this at most suggests a disagreement with the treatment recommendation and the results of an evaluation, not indifference to any serious medical risk or need.

Plaintiff's allegations regarding the December 19, 2009 treatment also do not show any indifference to a serious medical need, as Plaintiff only alleged that he was evaluated by Defendant Bangi at that time and reported abdominal pain of a 2 or 3 out of 10. Plaintiff does not allege any facts

10

suggesting that there was an excessive risk to Plaintiff's health at that time, or that Dr. Bangi failed to respond to such risk or need.

      6.    <u>PA-C T. Day</u>

Plaintiff's allegations against Defendant Day only discuss that Defendant Day evaluated Plaintiff in connection with his complaints, advised him that he had been receiving treatment, and informed him of the name of a drug that had been given to him. These allegations do not show Plaintiff had any serious medical need or risk that Defendant Day was aware of but disregarded, and thus Plaintiff has not stated any cognizable claim for deliberate indifference here. Plaintiff will be granted leave to amend this claim.

      7.    <u>Unknown Medical Staff</u>

Plaintiff brings claims against "unknown medical staff" and "CSP-Solano medical staff" for knowingly providing ineffective treatment.

As a general rule, the use of 'John Doe' to identify a defendant is not favored." <u>Gillespie v. Civiletti</u>, 629 F.2d 637, 642 (9th Cir. 1980). Doe defendants (i.e., unknown defendants) cannot be served by the United States Marshal until Plaintiff has identified them as actual individuals and amended his complaint to substitute names for the Does. To the extent Plaintiff names any Doe defendants, he must state allegations sufficiently describing who he is attempting to sue for what conduct, e.g., John Doe nurse #1, Jane Doe physician #1, etc.

To the extent Plaintiff attempts to bring a claim for deliberate indifference in violation of the Eighth Amendment against the unknown physician and nursing staff at SRMC, he has not pleaded facts indicating that any of them are state actors subject to liability under section 1983. Prisoners may only bring § 1983 claims against individuals acting "under color of state law." <u>See</u> 42 U.S.C. § 1983, 28 U.S.C. § 1915(e)(2)(B)(ii). Private individuals, not employed by the prison or another state agency, do not act under color of state law unless they are so closely affiliated with the state that their conduct "may fairly be treated as that of the state itself." <u>Jensen v. Lane Cnty.</u>, 222 F.3d 570, 575 (9th Cir. 2000) (citing <u>Jackson v. Metro. Edison Co.</u>, 418 U.S. 345, 350 (1974). In the prison medical care context, such close affiliations exist where a private physician or hospital contracts with a state prison to provide care to inmates. <u>See</u> <u>West v. Atkins</u>, 487 U.S. 42, 55–56, 108 S. Ct. 2250, 101 L. Ed. 2d 40

(1988); see also Jensen v. Lane Cnty., 222 F.3d 570, 575 (9th Cir. 2000) (relationship between county and private psychiatric group providing mental evaluations was so "deeply intertwined" that psychiatrist who signed commitment order acted under color of state law for § 1983 purposes).

Nor has Plaintiff alleged sufficient facts to show deliberate indifference by any of the unnamed medical staff at SRMC. According to Plaintiff, on October 13, 2009, a nurse evaluated him and gave him a liquid formula to assist in an ultrasound, and on October 14, 2009, an unnamed physician evaluated him and recommended treatments, and an unnamed nurse attempted to give him mediation for TB, which he refused. None of these factual allegations suggest any deliberate indifference to a known serious medical need or risk. Plaintiff further alleges that a nurse attempted to give him medication for TB, which he refused, and which caused him to be discharged. These allegations also do not suggest any deliberate indifference. Plaintiff's refusal to take TB medications recommended by the unnamed nurse at most suggests a disagreement between Plaintiff and that person regarding a treatment recommendation.

Although Plaintiff states that he brings claims against unnamed medical staff at SCC and CSP-Solano, he does not describe what any John or Jane Doe defendants did to violate his rights. His allegations that he made complaints about staff are insufficient to state any claim.

Plaintiff will be granted leave to amend these claims.

**B.    Fourteenth Amendment Due Process**

Plaintiff claims that the false TB classification that disqualified him from participating in the fire camp program at SCC violated his due process rights.

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974). In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. For state prisoners, liberty interests may arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466–68, 103 S. Ct. 864, 74 L.Ed.2d 675 (1983).

Plaintiff's inability to participate in a fire camp program does not implicate a liberty interest. The Due Process Clause does not confer on inmates a liberty interest in eligibility for prison programs.

12

Moody v. Daggett, 429 U.S. 78, 88 n. 9, 97 S. Ct. 274, 50 L. Ed. 2d 236 (1976) (rejecting argument that a pending warrant and detainer that adversely affected defendant's prison classification and qualification for institutional programs implicated a due process right). Liberty interests created by state law generally are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995). Plaintiff's allegation that he was unable to participate in the SCC fire camp program does not reflect the imposition of such a hardship. See id. Plaintiff has failed to state a claim on this basis.

Based on the foregoing, further leave to amend this due process claim would be futile, and should be denied.

### C. CDCR and State of California - Eleventh Amendment Immunity

Plaintiff seeks to bring claims against CDCR and the State of California to be financially liable for violations committed by SCC medical staff while on duty. Plaintiff is advised that he may not sustain an action against CDCR or the State of California.

The Eleventh Amendment prohibits federal courts from hearing suits brought against an unconsenting state. Brooks v. Sulphur Springs Valley Elec. Co., 951 F.2d 1050, 1053 (9th Cir. 1991) (citation omitted); see also Seminole Tribe of Fla. v. Florida, 116 S. Ct. 1114, 1122 (1996); Puerto Rico Aqueduct Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993); Austin v. State Indus. Ins. Sys., 939 F.2d 676, 677 (9th Cir. 1991). Eleventh Amendment immunity extends to suits against state agencies as well as those where the state itself is named as a defendant. See Natural Resources Defense Council v. California Dep't of Tranp., 96 F.3d 420, 421 (9th Cir. 1996); Brooks, 951 F.2d at 1053; Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (concluding that Nevada Department of Prisons was a state agency entitled to Eleventh Amendment immunity); Mitchell v. Los Angeles Community College Dist., 861 F.2d 198, 201 (9th Cir. 1989). Therefore, both CDCR and the State of California are entitled to Eleventh Amendment immunity from suit.

### D. Declaratory Relief

Plaintiff seeks a declaration that his rights were violated by various defendants. "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion,

exercised in the public interest." Eccles v. Peoples Bank of Lakewood Village, 333 U.S. 426, 431, 68 S. Ct. 641, 92 L. Ed. 784 (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." United States v. Washington, 759 F.2d 1353, 1357 (9th Cir. 1985).

In the event that this action reaches trial and the jury returns a verdict in favor of Plaintiff, the verdict will be a finding that Plaintiff's constitutional rights were violated. Accordingly, a declaration that a defendant violated Plaintiff's rights is unnecessary.

### E.   Rule 18/Rule 20

Plaintiff may not bring unrelated claims against unrelated parties in a single action. Fed. R. Civ. P. 18(a), 20(a)(2); Owens v. Hinsley, 653 F.3d 950, 952 (7th Cir. 2011); George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff may bring a claim against multiple defendants so long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are common questions of law or fact. Fed. R. Civ. P. 20(a)(2); Coughlin v. Rogers, 130 F.3d 1348, 1351 (9th Cir. 1997); Desert Empire Bank v. Insurance Co. of North America, 623 F.2d 1371, 1375 (9th Cir. 1980). Only if the defendants are properly joined under Rule 20(a) will the Court review the claims to determine if they may be joined under Rule 18(a), which permits the joinder of multiple claims against the same party.

Here, Plaintiff attempts to bring claims that are unrelated, such as his claims against certain staff for treatment while he was housed at SCC, and claims against different staff when he was transferred to CSP-Solano years later. Any improperly joined claims in any amended complaint Plaintiff files are subject to dismissal or severance.

### F.   Linkage

Plaintiff names as defendants, states that he is bringing claims against, the following people: Dr. Shuddy, Dr. Kimn, Dr. St. Clair, CMO, and D. Ramos. However, he does not state any factual allegations describing what each of these defendants did or did not do that violated a particular right.

Plaintiff's allegations must demonstrate that each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). To the extent Plaintiff

relies on any descriptions of activities by any of these people in his exhibits attached to his complaint, he may not do so. Although he may cite exhibits in support of his allegations, he must describe how each defendant violated his rights in the complaint itself to state a claim. Plaintiff will be granted leave to amend to attempt to cure these claims.

### G.   State Law Claim

Plaintiff's claim for negligence arises under state law. The Court will not exercise supplemental jurisdiction over any state law claim absent a cognizable federal claim. 28 U.S.C. § 1367(a); Herman Family Revocable Trust v. Teddy Bear, 254 F.3d 802, 805 (9th Cir. 2001); see also Gini v. Las Vegas Metro. Police Dep't, 40 F.3d 1041, 1046 (9th Cir. 1994). "When ... the court dismisses the federal claim leaving only state claims for resolution, the court should decline jurisdiction over the state claims and dismiss them without prejudice." Les Shockley Racing v. National Hot Rod Ass'n, 884 F.2d 504, 509 (9th Cir. 1989).

Because Plaintiff has not alleged any cognizable federal claims, the Court will not exercise supplemental jurisdiction over his state law claim, and declines to screen that claim at this time. 28 U.S.C. § 1367(a); Herman Family Revocable Trust, 254 F.3d at 805.

## V.

## CONCLUSION AND ORDER

For the reasons stated, Plaintiff's First Amended Complaint and Second Amended Complaint fail to state a claim upon which relief may be granted. Plaintiff is granted leave to file a Third Amended Complaint within thirty (30) days. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

Plaintiff may not change the nature of this suit by adding new, unrelated claims in his Third Amended Complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints). Plaintiff's Third Amended Complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights. Iqbal, 556 U.S. 662, 678. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . . ." Twombly, 550 U.S. at 555 (citations omitted).

Finally, an amended complaint supersedes the original complaint, Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and must be

15

"complete in and of itself without reference to the prior or superseded pleading," Local Rule 220. "All causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing to London v. Coopers Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send to Plaintiff a civil rights complaint form;
2. Plaintiff's First Amended Complaint, filed March 27, 2015 (ECF No. 12), is dismissed for the failure to state a cognizable claim;
3. Plaintiff's Second Amended Complaint, filed March 30, 2016 (ECF No. 27) is dismissed for the failure to state a cognizable claim;
4. Within **thirty (30) days** from the date of service of this order, Plaintiff shall file a Third Amended Complaint or a notice of voluntary dismissal; and
5. If Plaintiff fails to file a Third Amended Complaint in compliance with this order, the Court will recommend that this action be dismissed, with prejudice, for the failure to state a claim and the failure to obey a court order.

IT IS SO ORDERED.

Dated: **January 20, 2017**

UNITED STATES MAGISTRATE JUDGE